1   **HOWARD & HOWARD ATTORNEYS PLLC**
    KIMBERLY P. STEIN, ESQ.
2   NV Bar No. 8675
    JASON P. WEILAND, ESQ.
3   NV Bar No. 12127
    3800 Howard Hughes Pkwy., Suite 1000
4   Las Vegas, NV 89169
    Telephone: (702) 257-1483
5   Facsimile: (702) 567-1568
    E-Mail:  kps@h2law.com
6            jw@h2law.com
7
8   **SEVERSON & WERSON, P.C.**
    ERIC J. TROUTMAN (California Bar No. 229263)*
9   DIVYA S. GUPTA (California Bar No. 284282)*
    ALEXANDRA N. KRASOVEC (California Bar No. 279578)*
10  The Atrium
    19100 Von Karman Avenue, Suite 700
11  Irvine, California 92612
    Telephone: (949) 442-7110
12  Facsimile: (949) 442-7118
    * *pro hac vice to be filed*
13

14  *ATTORNEYS FOR DEFENDANT*
    *WELLS FARGO BANK, N.A.*
15

16                  **UNITED STATES DISTRICT COURT**

17                        **DISTRICT OF NEVADA**

18
    KIRBY SPENCER,                          | Case No. 2:14-cv-01648-LDG-GWF
19
              Plaintiff,                    | **OPPOSITION OF DEFENDANT WELLS**
20                                          | **FARGO BANK, N.A. TO PLAINTIFF'S**
          vs.                               | **MOTION FOR LEAVE TO FILE A**
21                                          | **SECOND AMENDED COMPLAINT**
    WELLS FARGO BANK, N.A.,
22                                          | **[REQUEST FOR ORAL ARGUMENT]**
              Defendant.
23

24        Defendant, WELLS FARGO BANK, N.A. ("Wells Fargo"), by and through its counsel,

25  Howard & Howard Attorneys PLLC, and Severson & Werson, P.C. hereby submits its Opposition

26  to Plaintiff's Motion For Leave To File A Second Amended Complaint.

27

28

# I. INTRODUCTION

After his counsel attended a Rule 26(f) conference and acknowledged this case was "not complex" and ought to be quickly settled on an individual basis, Plaintiff now files a motion to convert this individual TCPA case into a class action. The motion was filed without any attempt to meet and confer and provides no explanation as to what has changed since the Rule 26(f) conference that makes class treatment appropriate. Indeed, the motion speaks only of a cursory internet search that revealed a handful of complaints by semi-anonymous message board users. Nonetheless, Plaintiff argues to this Court that "justice requires" the case be immediately expanded into a massive class action. But justice requires nothing of the sort.

The facts supporting Plaintiff's motion are paltry. Plaintiff contends only that: i) he received additional calls after the filing of the individual complaint; and ii) that there are a few other complaints posted on some unidentified website regarding calls received from the same number. (Doc. 12 p. 2.) On that basis, Plaintiff now asks this Court to allow him to sue the entire Wells Fargo enterprise to recover for every misplaced call it has made since September of last year. (Doc. 12-1 p. 4.) Justice does not support so reckless an amendment on so flimsy a basis.

Importantly, and as the motion itself points out, Plaintiff has conducted no discovery in this case and, therefore, has no evidentiary basis on which to allege that any of the unsubstantiated claims of the "internet complainers" are true; that their circumstances mirror those of the named Plaintiff's; or that Wells Fargo—which operates a myriad of business lines serving diverse financial needs of millions of customers across the country—placed all of the challenged calls under the same or similar circumstances so as to justify such a massive class action.[1] That is, the

---

[1] As argued below, Plaintiff's class definitions are particularly problematic because the third-party complaints cited as justification for the amendment deal with only calls from *a specific number,* yet the class definition seeks to recover for all calls placed by Wells Fargo, *without regard* to the phone number it called from.

2

proposed second amended complaint contains *no* meaningful factual allegations to the effect that "Jeepers," "Jay" and "Mary" are all part of a coherent and ascertainable class that also includes the named class representative.

But there's a darker element here as well. The Plaintiff is attempting to exploit a statutory loophole. The TCPA's "express consent" defense operates in favor of a caller that has the requisite consent of the "called party." Unfortunately, however, the statute does not define the phrase "called party." While Congress obviously intended the defense to allow a business to rely on the consent of its customer in placing calls,[2] Plaintiff still argues that the vague phrase "called party" actually has nothing to do with the identity of the customer but turns, instead, on who answers or pays for a phone. But such an interpretation renders the "express consent" defense illusory—a caller can never know who answers or pays for a customer's phone and, hence, could never be assured meaningful use of the defense.[3]

---

[2] *See* H.R. REP. No. 102-317, at 17 (1991) (emphasizing that "[t]he Committee does not intend for this restriction to be a barrier to the normal, expected or desired communications between businesses and their customers. For example, a retailer, insurer, banker or other creditor would not be prohibited from using an automatic dialer recorded message player to advise a customer (**at the telephone number provided by the customer**) that … a bill had not been paid."."))(Emphasis Added.)

[3] Several petitions currently before the FCC ask the Commission to close that loophole by properly defining the phrase "called party" to mean "intended recipient." *See* Consumer Bankers Association Petition for Declaratory Ruling, *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278 (filed Sept. 19, 2014) ("CBA Petition"); ACA International Petition for Rulemaking, *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278 (filed Jan. 31, 2014); Rubio's Restaurant, Inc., Petition for Expedited Declaratory Ruling Regarding Reassigned Wireless Numbers, *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278 (filed August 11, 2014); Stage Stores, Inc., Petition for Expedited Declaratory Ruling Regarding Reassigned Wireless Numbers, *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278 (filed June 3, 2014) ("Stage Stores Petition"); United Healthcare Services, Inc., Petition for Expedited Declaratory Ruling Regarding Reassigned Wireless Numbers, *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278 (filed Jan. 16, 2014).

Plaintiff knows all about this loophole and has carefully drafted his class definitions to take full advantage of it. Not surprisingly, therefore, there will be significant prejudice to Wells Fargo if the motion is granted. Wells Fargo is working to ameliorate that prejudice by quickly drafting a the motion to stay the case. In the meantime, however, the Court should not allow the Plaintiff to benefit by this attempted bait-and-switch, and the motion to amend should be denied.

## II. FACTS

Plaintiff filed this suit on October 7, 2014. (Doc. 1.) On October 27, 2014, and within the time permitted by Rule 15(a)(1)(A), Plaintiff filed his Amended Complaint. (Doc. 5.) Neither the original, nor first amended, complaint contain class allegations.

On January 20, 2015, Plaintiff's Counsel Craig Perry and Wells Fargo's counsel Kim Stein, along with attorneys with Severson & Werson, APC—Wells Fargo's national TCPA counsel—attended a Rule 26(f) conference in this case. (Declaration of Counsel Eric J. Troutman ("Troutman Decl."), ¶ 2.) As the case was a simple individual TCPA case, the parties discussed that the case was "not complex" and did not merit any special handling in terms of discovery planning. Instead, Wells Fargo's counsel agreed to a streamlined discovery plan that allowed for only 180 days for fact discovery, closing on June 22, 2015. (Troutman Decl., ¶ 6.)

During the Rule 26(f) conference Counsel Troutman informed Counsel Perry that Wells Fargo was considering filing a motion to stay the case on primary jurisdiction grounds. (Troutman Decl., ¶ 4.) Counsel Perry stated that he was well aware of such motions and had seen them before. *Id.* The parties discussed the relative merit of such a motion on the specific facts of this case—a third-party receiving calls intended for a consenting customer—but disagreed on whether the motion was likely to be granted. *Id.* Nonetheless, Counsel Perry suggested that Wells Fargo not file any such motion in this case until he had a chance to make a reasonable settlement demand. Indeed, Counsel Perry stated—and Wells Fargo's counsel believed—that the case could

be "quickly resolved" and that formal discovery was not likely to be necessary. *Id.*

Over the following two weeks, attorneys with Severson & Werson sent several follow-up e-mails to Counsel Perry inquiring regarding the settlement demand he had promised. (Troutman Decl., ¶ 7 and Exhibit "A" thereto.)  In one e-mail, Counsel Troutman even specifically referenced the fact that Wells Fargo was holding off seeking a stay of this matter due to Counsel Perry's promise to make a reasonable individual settlement demand.  *Id.* Counsel Perry never responded to these e-mails. *Id.*

On February 3, 2015, Plaintiff filed his motion for leave to amend. The motion was filed without any attempt to meet and confer. (Troutman Decl., ¶ 9.)  Indeed, the last time counsel for Wells Fargo spoke to Counsel Perry was at the Rule 26(f) conference.  *Id.*

## III.  JUSTICE IS NOT SERVED BY THE AMENDMENT PLAINTIFF SEEKS

Plaintiff's most basic required showing on his motion is that the amendment is required by justice. Under Federal Rule of Civil Procedure 15(a), a party may amend its complaint only "once as a matter of course at any time before a responsive pleading is served." Fed. R. Civ. P. 15(a). Thereafter, a party may amend only by leave of the court or by written consent of the adverse party. *Id.* Leave is to be freely given "when justice so requires." *Id.*

The Plaintiff offers nothing to the Court suggesting that justice requires expansion of this case in any respect. As set forth below, neither the named Plaintiff nor any class member will be prejudiced in any way if the motion is denied, and Wells Fargo is likely to face significant prejudice. Moreover, Plaintiff's counsel has failed to demonstrate the sort of diligent investigation that might justify conversion of an individual case to a class action. For these reasons, and many others, the motion should be denied.

### A.  The Named Plaintiff Loses Nothing if the Amendment is Denied

The rule allowing liberal leave to amend pleadings is primarily designed to assure that

parties do not lose valid claims or defenses. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003) (the underlying purpose of Rule 15 is to "facilitate decision on the merits, rather than on the pleadings or technicalities.") .

Here, the Plaintiff is at no risk of losing his claims if the amendment is not permitted. The claims of the named Plaintiff are well-preserved without an amendment. He may recover for calls placed post-filing without the need of the amendment he seeks. Hence, Mr. Spencer loses nothing if the amendment is denied as it does not advance his individual case at all.[4]

**B.    Plaintiff Has Failed to Demonstrate That Any Purported Class Member Would be Prejudiced by the Denial Of Leave to Amend**

Similarly, there is no risk of prejudice to purported "class members." The class members – if any—only recently received the challenged calls on or after September, 2014. (Doc 12 pp. 20-21). The TCPA is governed by a four year statute of limitations. 28 U.S.C.A. § 1658(a); *see also Hawk Valley, Inc. v. Taylor*, No. 10-CV-00804, 2012 WL 1079965, at *12 (E.D. Pa. Mar. 30, 2012); *Zidek v. Analgesic Healthcare, Inc.*, No. 13 C 7742, 2014 WL 2566527, at *1 (N.D. Ill. June 6, 2014).  If the class members have valid claims, therefore, they have a long time yet to file suit—they may file safely well into 2018.

**C.    Plaintiff's Moving Papers Demonstrate That He Lacks a Reasonable Factual Basis for the Allegations He Seeks to Add**

Federal Rule of Civil Procedure Rule 11 requires that allegations in a Complaint "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b). Rule 11 imposes on attorneys an "an affirmative duty to conduct a reasonable inquiry into the facts and the

---

[4] To the extent the Plaintiff merely seeks injunctive relief for calls placed to his cell phone, Wells Fargo stipulates to that amendment—without admitting the appropriateness of that relief or the substantive merit of his claims.

law before filing, and . . . the applicable standard is one of reasonableness under the circumstances." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991).

Plaintiff's motion reveals that his counsel has flatly failed to conduct the sort of reasonable investigation that would justify converting this case into a class action. Counsel seeking to file nationwide class actions against major institutions should spend adequate time prior to filing suit to assure the accuracy of their proposed class allegations. The only investigation Counsel Perry's motion speaks of, however, is a review of an unspecified website containing unsubstantiated hearsay complaints from semi-anonymous commenters. It is beyond reckless—and certainly inappropriate under Rule 11—for Counsel Perry to blindly rely on the comments of internet users with names like "Jeepers" and "Private"[5] as proof that that Plaintiff's class allegations have merit. This is especially true as the internet complaints Plaintiff references deal with calls received from a single specific number, yet the class definitions Plaintiff sets forth assert claims against the entire Wells Fargo enterprise, without regard to the phone number it called from. Even assuming that the complaints are genuine, therefore, Counsel Perry is overstepping by using this handful of complaints regarding errant calls coming from a single outpulse number as justification to probe the calling practices of the entire Wells Fargo enterprise.

Given the expense that is likely to be incurred by Wells Fargo preparing for and defending the nationwide class allegations the Plaintiff seeks to create,[6] justice is not served by the proposed amendment and the Court should reject the adequacy of Counsel Perry's "investigation" into the facts and deny the motion to prevent a flagrant violation of Rule 11.

---

[5] *See* Doc. 12 p. 2-3.

[6] *See* Section D, *infra.*

**D.      Wells Fargo Will Be Prejudiced by the Amendment**

  **1.      Litigating This Case as a Class Action With the Proposed Class Definitions Will be a Massive Undertaking**

Consideration of prejudice to the opposing party should carry the greatest weight in considering a motion for leave to amend. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987). Indeed, prejudice is the "touchstone of the inquiry under rule 15(a)." *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001); *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973). Here, Wells Fargo is likely to suffer significant prejudice if this case is converted into a class action. In addition to Wells Fargo needing to lean on more experienced class counsel to assist in the defense, it must also brace for extensive discovery and document preservation efforts that can be hugely expensive.

While Counsel Perry alleges that he has "substantial experience in prosecuting complex litigation and class actions,"[7] his moving papers suggest a stunning ignorance as to the sort of expense Wells Fargo is likely to incur defending this case if the motion is granted. Indeed, he suggests that converting this case into a nationwide class action would result in only "relatively modest"[8] additional discovery and that Wells Fargo would only need to respond to "a few additional discovery requests..."[9]  The stark reality, however, is that discovery in an individual TCPA case looks nothing like discovery in a nationwide TCPA class action.

As the Plaintiff's proffered class definitions are extremely broad—seeking to hold the entire Wells Fargo enterprise liable for every errant call placed anywhere in the country—the scope of discovery Plaintiff will put at issue is enormous.  If the motion is granted, therefore, Wells Fargo would be required to locate appropriate custodians and preserve data for every single

---

[7] Doc. 12-1 p. 6.

[8] Doc 12 p. 5.

[9] Doc. No. 12 p. 4.

such call, and begin the work of identifying every account record that pertained to each phone call to determine whether the "called party"[10] matched the customer.  As Wells Fargo has millions of customers across numerous business lines operating independently across the country, that task could be phenomenally expensive. (Troutman Decl., ¶ 9)  Further, those "few additional discovery requests" Counsel Perry plans to serve will undoubtedly seek data regarding every single phone call Wells Fargo placed during the class period, every phone number it called, the identity of every customer it was trying to reach, along with every account record demonstrating the presence or absence of consent with respect to each class member.[11]

While it is premature at this stage to consider what hypothetical discovery battles may arise after an amendment, it is entirely appropriate—indeed critical—that the Court recognize that Plaintiff is seeking to alter the nature of this litigation completely and to the undeniable prejudice of Wells Fargo.

### 2. The Prejudice is Particularly Stinging Here Given Counsel Perry's Conduct at the Rule 26(f) Conference of Counsel and Speaks of "Bad Faith"

Rule 26(f)(2) of the Federal Rules of Civil Procedure requires the parties to hold a conference to, *inter alia*, discuss "the nature and basis of their claims"; "the possibilities for promptly settling or resolving the case"; and the development of a "proposed discovery plan." Fed. R. Civ. P. 26(f)(2). While the Rule does not specifically require a party to disclose their intent to imminently convert a case into a class action, such a disclosure certainly seems to be within the spirit of the Rule.

As set forth above, however, Counsel Perry failed to make that disclosure and, instead,

---

[10] As noted below in section E(2) below, the use of the phrase "called party" renders the class unascertainable.

[11] The necessity of this sort of discovery underscores why class treatment would never be appropriate here anyway—a series of mini-trials is necessary to determine the individual merits of each class member's case. *See* Section E below.

affirmatively mislead Wells Fargo's counsel into believing that this case would remain, as plead, a relatively limited individual TCPA case with a high likelihood of a prompt resolution. (Troutman Decl., ¶¶ 3-5.) As Wells Fargo's nationwide TCPA counsel had previously worked out an arms-length settlement with Counsel Perry regarding the claims of a different TCPA claimant, Wells Fargo reasonably believed Counsel Perry's representations were true, and relied on those representations in electing not to immediately file a motion to stay the case and seek *pro hac vice* admission for Mr. Troutman. (Troutman Decl., ¶ 5.) It also agreed to a discovery plan that would be completely inappropriate in a class action. (Troutman Decl., ¶ 6.)

In assessing this motion for leave to amend, this Court is tasked with assessing whether the proffered amendment is being sought in bad faith. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185-87 (9th Cir. 1987). While "bad faith" most commonly arises in amendments that are sought solely for, or after, inappropriate delay,[12] Counsel Perry's conduct in this case seems to fit the bill as well. It is particularly telling that Counsel Perry failed to respond to several efforts to contact him after the conference, only to re-surface after filing his motion. (Troutman Decl., ¶¶ 7-8 and Exhibit "A" thereto.) This—coupled with Counsel's inappropriately shallow investigation supporting the amendment and Plaintiff's numerous similar TCPA filings—suggests that the amendment is a transparent attempt to extract a larger dollar settlement out of Wells Fargo than would otherwise have been available in an individual case.

**E.    The Amendments Are Futile Anyway**

As Plaintiff's moving papers point out, a motion for leave should be denied where the proposed amendment would be futile. (Doc. 12 p. 3.) To assess futility in the context of a motion for leave to add class allegations, courts commonly review the proposed amendment to determine

---

[12] *See, e.g., Howey v. United States*, 481 F.2d 1187, 1190-91 (9th Cir.1973)

1   whether the proffered class is one that might properly be certified under Rule 23. *See Rosell v.*

2   *Wells Fargo Bank, N.A.*, No. C 12-6321 PJH, 2013 WL 4079178, at *6 (N.D. Cal. Aug. 1, 2013)

3   (denying leave to add class allegations as futile where complaint did "not allege facts sufficiently

4   plausible to suggest that the requirements of Rule 23 can be met"); *Presser v. Key Food Stores*

5   *Coop., Inc.*, 218 F.R.D. 53, 56 (E.D.N.Y. 2003) (holding that in addressing motion to amend to

6   add class allegations, Rule 15's futility analysis requires evaluation of "the likelihood that [the]

7   proposed class will be certified pursuant to [Rule] 23.")

8

9       As the allegations of the Plaintiff's proposed second amended complaint do not come close

10  to identifying ascertainable and certifiable classes, however, the motion to amend should be

11  denied on the ground that the amendment would be futile.

12      **1.      Plaintiff Fatally Fails to Identify the Subsection of Rule 23(b) That Justifies
13              Class Treatment of his Claim**

14      A plaintiff's failure to identify the specific subsection of Rule 23(b) under which he hopes

15  to obtain certification dooms a motion to amend to add class allegations. *See Rosell v. Wells*

16  *Fargo, supra*, 2013 WL 4079178, at *6. Here, the Plaintiff has failed to allege the subsection of

17  Rule 23(b) that he contends justifies class treatment. Hence, his proposed amendment is futile.

18

19      **2.      Plaintiff is not a Typical Class Member in that He Has Filed Over a Dozen
20              TCPA Cases In this District and is Too Preoccupied To Serve as a Class
21              Representative**

21      Plaintiff has apparently decided to use the TCPA as his own cottage industry. A docket

22  search reveals that Plaintiff has recently filed over a dozen TCPA cases in this district. (Request

23  for Judicial Notice of Spencer Actions ("RJN"), Exhibits A-N.)  In three of these cases, as here,

24  the Plaintiff is now attempting to amend the Complaint to add class allegations. (RJN, Exhibits A-

25  C.)

26

27      To satisfy Rule 23(a)(3), however, the named plaintiff must be a "typical" member of the

28  class he seeks to represent. "The test of typicality `is whether other members have the same or

11

similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). Thus, "class certification should not be granted if `there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to [him].'" Id. (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)).

Here the Plaintiff is not a typical class member. His conduct of attempting to prosecute multiple TCPA class actions simultaneously in unique. Obviously, he will be uniquely "preoccupied" with his busy litigation schedule to the detriment of the class. Further, the sheer volume of cases he has filed speaks to a unique factual circumstance underlying his lawsuits—how is it that he has managed to receive so many errant calls in the first place? Where there's smoke there's fire and Plaintiff has undoubtedly been engaging in the sort of "opportunistic conduct"—such as squatting on recycled cell phones to win a TCPA bounty—that has recently drawn the ire of the courts.[13] While discovery will reveal the specifics of Plaintiff's unique circumstances, the record is already clear that Mr. Spencer is not a "typical" member of the class he wishes to represent.

**3.   Both of Plaintiffs' Proposed Classes Are Impermissible Fail-Safe Classes**

Recursive[14] class definitions –requiring the merits of each class member's claim to be evaluated in order to determine class membership –are known as "fail safe" class definitions and

---

[13] See *Gensel v. Performant Technologies, Inc.*, No. 13-C-1196, 2015 WL 402840, *2 (E.D.Wis. Jan. 28, 2015) (staying recycled cell phone case based on ACA Petition and noting the need for a safe harbor to avoid "opportunistic behavior" by TCPA litigants)

[14] "Recursion" is a term used in mathematics and logic when the application of a function to its own values generates an infinite sequence of values. *See, generally,* http:// en.wikipedia.org/ wiki/Recursion.

are not certifiable. *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010) (unpublished) ("Fail safe" classes are unascertainable because the class definition would allow putative class members to avoid the effects of res judicata if they do not succeed on the merits of their claim, such that putative members either win or are not part of the class); *Warnick v. DISH Network LLC*, 2014 WL 6680407, at *4 (D.Colo. Nov. 25, 2014) (denying leave to amend fail safe class); *Brown v. Hain Celestial Group, Inc.*, 2014 WL 6483216, at *7 (N.D.Cal. Nov. 18, 2014) ("'[I]f Hain loses, we won't.' This is impermissible. It amounts to a 'fail-safe' class in which membership will be determined by the Court's prior determination of Hain's liability."); *Syed v. M-I LLC*, 2014 WL 5426862, *6 n.4 (E.D.Cal. Oct. 23, 2014) ("[A] 'fail-safe' class is one that includes only those who are entitled to relief [and] allow[s] putative class members to seek a remedy but not be bound by an adverse judgment-either those class members win or, by virtue of losing, they are not in the class and are not bound." ); *Gray v. County of Riverside*, 2014 WL 5304915, at *13 (C.D.Cal. Sept. 2, 2014) ("A class as 'fail safe' if the definition of the class shields the class members from adverse judgment."); *Trosper v. Styker Corporation*, 2014 WL 4145448, at *7 (N.D.Cal. Aug. 21, 2014) ("The Ninth Circuit has held that '[t]he fail-safe appellation is simply a way of labeling the obvious problems that exist when the class itself is defined in a way that precludes membership unless the liability of the defendant is established.").

Plaintiff offers two proposed class definitions. Both are impermissible fail safe classes.

### (a)   Plaintiff's "Called Party" Class is a Fail Safe Class

Plaintiff's first class definition includes all "called parties" that could not have consented to receive calls on their phone number because Wells Fargo obtained the number from some other source. (Doc. 12-1 p. 4.) By defining the class to include only those "called part[ies]" that did not "provide[] the[ir] phone number" to Wells Fargo, however Plaintiff seeks to create a class with undefeatable claims. Either a class member is a "called party" that did not consent; or he/she is not

1    a class member to begin with. This is not permitted and the amendment should be denied.

2    *Warnick*, *supra*, 2014 WL 6680407, at *4.

3                  **(b)    Plaintiff's "Revocation" Class is a Fail Safe Class**

4           Plaintiff's second class includes only those individuals that requested Wells Fargo's calls

5    to cease or advised Wells Fargo that it lacked their consent. (Doc. 12-1 p. 4-5.) While there are

6    undoubtedly shades of grey within this class definition that render class membership

7    unascertainable[15] the "meat" of the definition includes those class members that successfully

8    "revoked" their express consent prior to any challenged phone call. Once again, therefore, this

9    class is an impermissible fail safe class because either a class member has a valid claim under the

10   TCPA—i.e. he/she successfully revoked consent—or he/she is not a class member.   *Warnick*,

11   *supra*, at *4.

12

13               **4.    Plaintiff's "Called Party" Class is Facially Unascertainable**

14          "A class definition should be precise, objective, and presently ascertainable," though "need

15   not be so ascertainable that every potential member can be identified at the commencement of the

16   action ." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D.Cal.1998).

17          Attempting to exploit a loophole in the TCPA's statutory language, Plaintiff defines a class

18   that mirrors the vague "called party" language utilized in the statute' express consent defense.

19   (Doc. 12-1 p. 4.) But as this class definition is fatally vague, its members are necessarily

20   unascertainable.[16] Specifically, who is the "called party"?[17]

21

22

23   [15] *See* section E(3), *infra*.

24   [16] At a minimum, a class definition must be "definite enough so that it is administratively feasible
     for the court to ascertain whether an individual is a member."  *O'Connor v. Boeing N. Am., Inc.*,
25   184 F.R.D. 311, 319 (C.D. Cal. 1998)); *see also Balschmiter v. TD Auto Finance LLC*, 2014 WL
     6611008, at *15 (E.D. Wis. Nov. 20, 2014) ("The Court has serious reservations about the
26   plaintiff's method to ascertain the putative class members. Ascertainability in this case is about
     'identifying and providing notice to the class members as individuals, not merely numbers on a
27   list.'")

28

                                                    14

-If it is the person that actually answers the phone, how can class members possibly be identified?

-If it is the person Wells Fargo was trying to reach, how is the Plaintiff a class member?

-If it is the person that pays for the phone line (i.e. the subscriber), how do the parties determine the identity of the subscriber to each phone line at the time each call was placed?[18] And, even more problematically, is Wells Fargo really to be held liable for placing calls with its customer's consent just because somebody else pays for the customer's cell phone?[19]

As such the class definition is improper and leave to amend should be denied. *See e.g.*, *APB Associates, Inc. v. Bronco's Saloon, Inc.*, 297 F.R.D. 302, 318 (E.D. Mich. 2013) (rejecting a class definition based upon individuals that were "sent" a fax advertisement because it was unclear whether that meant: the person who owned the fax machine; the person who opened the account and paid the bill for the telephone line that the fax machine used to receive signals; the person to whom the fax advertisement was addressed; persons who happened to pick up the fax; or all of the

---

[17] Courts have applied four different definitions of the phrase in various circumstances. *See* 1. *Cellco P'ship v. Dealers Warranty, LLC*, No. 09-cv-1814, 2010 WL 3946713, at *10 (D.N.J. Oct. 5, 2010) (finding that the phrase "called party" means "the intended recipient of the call"); 2. *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (equating "called party" with "recipient" in paraphrasing elements of TCPA claim); 3. *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 682 (S.D. Fla. 2013) (holding that "called party" depends on "whether the plaintiff is the regular user of the phone and whether the defendant was trying to reach him or her by calling that phone"); and 4. *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 643 (7th Cir. 2012) (defining the "called party" as "the person subscribing to the called number at the time the call is made").

[18] *See e.g.*, *Smith v. Microsoft Corp.*, 297 F.R.D. 464, 473 (S.D.Cal. 2014)(recognizing that there is no reverse-lookup provider that can reliably provide subscriber information at a specified date in the past).

[19] And so the loophole presents itself. It is obviously manifestly unjust to hold Wells Fargo liable for calls its placed to its own customers on a number provided by that customer just because someone else happens to pay for that customer's cell phone. Should the Court be inclined to grant Plaintiff leave to amend, therefore, it ought also grant Wells Fargo's motion to stay, filed prior to this Opposition.

above).

### 5.   Plaintiff's "Revocation" Class is Full of Flaws

As bad as Plaintiff's "Called Party" class is, it is actually the better of Plaintiff's two definitions. The "Revocation" class is fatally defective and vague in a number of ways. Out of the gate, it is inappropriately plead in the disjunctive. How can Wells Fargo or this court reasonably be expected to ascertain—on presently existing objective criteria—who "request[ed] that the calls cease *or* otherwise communicat[ed] to Defendant that Defendant did not have consent to make any such calls to that cellular phone"?  (Doc. 12-1 p. 5.) (Emphasis Added).

Further, it does not take much imagination to recognize that that the circumstances by which a person might "communicate" that calls should cease or that consent is lacking will vary widely. The words used to convey such notions will vary widely. The intent behind the words used will vary widely. The reasons why a call might have been placed after receipt of such information will vary widely. Further, consent may be—and commonly is—re-given after being revoked. The strength of an individual's claim that his or her "communication" constituted effective revocation, therefore, will vary widely and turn on the individual merits of each class member's unique circumstances. None of this speaks to an ascertainable class of individuals affected by a common practice in a common way. *See generally Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 402 (E.D. Pa. 1995) (finding certification of TCPA case impossible because the gravamen of the complaint was not a "common course of conduct" by the defendant but "a series of individual transmissions under individual circumstances, each of which is an alleged violation of the statute").[20]

---

[20] Not surprisingly, therefore, courts constantly refuse to certify TCPA class actions because common issues do not predominate. *Gene and Gene LLC v. Biopay, LLC*, 541 F.3d 318, 327-29 (5th Cir. 2008)(holding that TCPA class cases cannot be certified unless the Plaintiff can demonstrate that common of proof is available to establish liability); *Kristensen v. Credit Payment* (footnote continued)

Moreover, it has been repeatedly held that a non-customer (i.e. a "wrong number" or "recycled cell") Plaintiff is not sufficiently typical or adequate to represent a class including non-consenting customers. *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292 (N.D. Ill. 2014) (finding "wrong number" class Plaintiff cannot represent class including debtor class members); *Labou v. Cellco P'ship*, No. 2:13-CV-00844-MCE, 2014 WL 824225 (E.D. Cal. Mar. 3, 2014) (pre-emptively decertifying class where non-customer attempted to represent claims of broader class including non-consenting customers). The Plaintiff's "revocation" class, however, draws no distinction between Wells Fargo's customers and non-customers. Hence, Plaintiff is an invalid class representative for most of the Plaintiff's purported class.

As Plaintiff's class definition lacks any objective criteria by which class members might be ascertained, is plead in the disjunctive, and facially demonstrates both a lack of commonality and typicality, the proposed amendment is futile and leave to amend should be denied.

////

////

////

////

////

////

---

*Services*, No. 2:12–CV–00528–APG, 2014 WL 1256035, at *1306 (D. Nev. Mar. 16, 2014), ("Kristensen's burden at the class certification phase is to 'advance a viable theory employing generalized proof to establish liability with respect to the class involved.'"); *Chapman v. First Index, Inc.*, No. 09 C 5555, 2014 WL 840565, at *3 (N.D. Ill. Mar. 4, 2014) (denying class in TCPA class action because "the Court would be required to engage in case-by-case inquiries to determine whether each fax was transmitted without the prior express invitation or permission of the recipient"); *Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 237 (S.D. Ill. Mar. 11, 2011) (referring to TCPA class action as simply "unmanageable" given issues of individual consent).

1

## IV.  CONCLUSION

2       For the foregoing reasons, the Court should deny Plaintiff's Motion for Leave to File a

3   Second Amended Complaint.

4   DATED this 19th day of February, 2015.

5

6                      By

7                           KIMBERLY P. STEIN (Nevada Bar No. 8675)
HOWARD & HOWARD ATTORNEYS PLLC

8                           Wells Fargo Tower, Suite 1000
3800 Howard Hughes Parkway

9                           Las Vegas, Nevada 89169-5980
Telephone:  (702) 257-1483 | Fax:  (702) 567-1568

10                          Email:  KStein@HowardandHoward.com

11

12                          ERIC J. TROUTMAN*
DIVYA S. GUPTA*

13                          ALEXANDRA N. KRASOVEC*
SEVERSON & WERSON

14                          A Professional Corporation
The Atrium

15                          19100 Von Karman Avenue, Suite 700
Irvine, California 92612

16                          Tel. (949) 442-7110

17                          Attorneys for Defendant WELLS FARGO BANK,
N.A.

18                          * seeking admission pro hac vice

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF ELECTRONIC FILING AND CERTIFICATE OF SERVICE**

2

    I, the undersigned, do hereby certify that on February 19, 2015, I electronically filed a

3

true and correct copy of the foregoing document with the Clerk of this Court using the CM/ECF

4

system, which sent notification of such filing to the following:

5

Craig K. Perry, Esq.

6

Craig K. Perry & Associates
8010 W. Sahara Avenue, Suite 260

7

Las Vegas, NV 89117

8

9

    Executed on February 19, 2015, at Las Vegas, Nevada.

10

11

12

13

Stephanie T. George

14

15

16

4821-3990-6082, v. 1

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF ERIC J. TROUTMAN

1   **HOWARD & HOWARD ATTORNEYS PLLC**
     KIMBERLY P. STEIN, ESQ.
2    NV Bar No. 8675
     JASON P. WEILAND, ESQ.
3    NV Bar No. 12127
4    3800 Howard Hughes Pkwy., Suite 1000
     Las Vegas, NV 89169
5    Telephone: (702) 257-1483
     Facsimile: (702) 567-1568
6    E-Mail:  kps@h2law.com
              jw@h2law.com
7

8   **SEVERSON & WERSON, P.C.**
     ERIC J. TROUTMAN (California Bar No. 229263)*
9    DIVYA S. GUPTA (California Bar No. 284282)*
     ALEXANDRA N. KRASOVEC (California Bar No. 279578)*
10   The Atrium
     19100 Von Karman Avenue, Suite 700
11   Irvine, California 92612
     Telephone: (949) 442-7110
12   Facsimile: (949) 442-7118
13   * *pro hac vice to be filed*

14   *ATTORNEYS FOR DEFENDANT*
     *WELLS FARGO BANK, N.A.*
15

16

17                    **UNITED STATES DISTRICT COURT**

18                        **DISTRICT OF NEVADA**

19   KIRBY SPENCER,                          | Case No. 2:14-cv-01648-LDG-GWF

20              Plaintiff,
                                             **DECLARATION OF ERIC J.**
21        vs.                                **TROUTMAN IN SUPPORT OF**
                                             **OPPOSITION OF DEFENDANT WELLS**
22   WELLS FARGO BANK, N.A.,                 **FARGO BANK, N.A. TO PLAINTIFF'S**
                                             **MOTION FOR LEAVE TO FILE A**
23              Defendant.                   **SECOND AMENDED COMPLAINT**

24

25        I, Eric J. Troutman, declare as follows:

26        1.     I am an attorney duly licensed to practice law in the State of California and am a

27   member of the law firm of Severson & Werson, APC, nationwide coordinating outside counsel for

28

1   TCPA litigation for Wells Fargo Bank, N.A. ("Wells Fargo").[1]  I make this declaration in support

2   of the Wells Fargo's opposition to Plaintiff's Motion for Leave to File a Second Amended

3   Complaint.  The following facts are within my own personal knowledge and, if called as a witness

4   I could, and would, testify competently to the following facts.

5          2.      On January 20, 2015, Plaintiff's Counsel Craig Perry and Wells Fargo's counsel

6   Kim Stein conducted a Rule 26(f) conference in this case. As I often do in my role as Wells

7   Fargo's nationwide coordinating TCPA counsel, I attended the Rule 26(f) conference to assess the

8   complexity of the case and determine whether *pro hac vice* admission would be appropriate.

9          3.      During the Rule 26(f) conference, Counsel Perry represented that this was not a

10  complex case and that a standard discovery plan would suffice that allowed only 180 days for fact

11  discovery. He also stated that he believed the case could be quickly resolved on an individual basis

12  and promised to get back to my office with a demand. Counsel Perry did not mention or allude to

13  any intent to convert this case into a class action.

14         4.      I informed Counsel Perry that Wells Fargo was considering filing a motion to stay

15  the case on primary jurisdiction grounds.  Counsel Perry stated that he was well aware of such

16  motions and had seen them before. The parties then discussed the relative merit of such a motion

17  on the specific facts of this case—a third-party receiving calls intended for a consenting

18  customer—but disagreed on whether the motion was likely to be granted. Counsel Perry suggested

19  that it was not necessary for Wells Fargo to file any such motion in this case until he had a chance

20  to make a reasonable settlement demand.  Counsel Perry stated—and I believed—that the case

21  could be "quickly resolved" and that formal discovery was not likely to be necessary.

22         5.      I have worked with Counsel Perry before on another individual case against Wells

23  Fargo. That case quickly resolved after counsel made a reasonable individual settlement demand. I

24  believed this case would follow the same track, as Counsel Perry represented. As a result of

25  Counsel Perry's representations at the Rule 26(f) conference, I believed this was a non-complex

26  _____

27  [1] *Pro hac vice* admission is pending (awaiting certificate of good standing).  Counsel of record for
    this matter is Kimberly P. Stein of the law firm HOWARD & HOWARD ATTORNEYS PLLC.

28

1  case that did not justify Wells Fargo incurring the expense of seeking *pro hac vice* admission for

2  its national counsel, or the filing of a motion to stay the case on primary jurisdiction grounds.

3  Instead, as I told Counsel Perry at the Rule 26(f) conference, Wells Fargo would simply await

4  word of the settlement demand and attempt to effectuate a quick resolution without any further

5  expense being incurred.

6        6.      Also as a result of Counsel Perry's representations at the Rule 26(f) conference,

7  Wells Fargo agreed to a streamlined discovery plan that allowed for only 180 days for fact

8  discovery, closing on June 22, 2015.  However, this agreed to discovery plan would be completely

9  inappropriate in a nationwide class action and Wells Fargo never would have agreed to it had it

10  known of Counsel Perry's intended amendment.

11       7.      Over the following two weeks, attorneys with Severson & Werson sent several

12  follow-up e-mails to Counsel Perry inquiring regarding the settlement demand he had promised.

13  In one e-mail I even specifically referenced the fact that Wells Fargo was holding off incurring the

14  expense of seeking a stay of this matter in the hopes that a quick resolution might be possible.  Yet

15  Counsel Perry never responded to these e-mails.   A true and correct copy of the emails to Counsel

16  Perry are attached hereto as Exhibit "A."

17       8.      On February 3, 2015, Plaintiff filed his motion for leave to amend. The motion was

18  filed without any attempt to meet and confer.  The last time counsel for Wells Fargo spoke to

19  Counsel Perry was at the Rule 26(f) conference.

20       9.      As national counsel for Wells Fargo, I am aware of the expansive nature of the

21  Wells Fargo enterprise, including numerous business lines with millions of customers offering

22  various products and services that operate independently across the country.  As a result, the task

23  of conducting class-wide discovery in such a broadly-defined proposed TCPA action

24  phenomenally expensive. Specifically, Wells Fargo would be tasked with locating appropriate

25  custodians and preserving data for every single call where the "called party"  did not match the

26  Wells Fargo customer.  As the definition of "called party"  is unclear, furnishing such a search is

27  likely impossible. Even if it were, it requires at a minimum, review of every single customer file.

28  Given the sheer number of Wells Fargo customers, this would be a monumental task. Further, I am

DECLARATION OF ERIC J. TROUTMAN IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION TO
AMEND COMPLAINT

1  informed and believe that numerous Wells Fargo's dialer operations teams support numerous

2  different individual business lines across the country, each of which utilize dialer strategies based

3  upon separate and evolving policies and procedures. In a recent class case my office oversaw, it

4  took approximately 50 attorney hours to identify appropriate custodians and request holds for the

5  potentially relevant data regarding *one* business line.  I predict it would take at least 10 times as

6  long for me to complete that task for the entire enterprise in this case. While it is difficult to

7  predict how much time it might take internally for Wells Fargo to implement such a hold, an

8  additional 1,000 hours of non-attorney time is likely. Moreover, this time would be spent merely

9  implementing a "bulk hold"; a refined hold based on the actual class definitions would take many

10  times longer due to the need to individually search each file to determine if the "called party" was

11  reached.  Given the very limited investigation undertaken by Plaintiff's counsel in this case, it

12  would be unjust to require Wells Fargo to incur all of that expense—which would necessarily be

13  triggered if this case is converted to a class action—at this stage and the amendment should,

14  therefore, be denied.

15

16      I declare under penalty of perjury under the laws of the United States of America that the

17  forgoing is true and correct.

18      Executed this 18th day of February, 2015 at Irvine, California.

19

20

21                                                    Eric J. Troutman

22

23

24

25

26

27

28

DECLARATION OF ERIC J. TROUTMAN IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION TO
AMEND COMPLAINT

**EXHIBIT A**

## Taylor P. Hankins

| | |
|---|---|
| **From:** | Divya S. Gupta |
| **Sent:** | Wednesday, February 11, 2015 12:46 PM |
| **To:** | Taylor P. Hankins |
| **Subject:** | Fwd: Spencer v. WF (Rule 26 Follow Up) |
| **Attachments:** | Gensel stay order.pdf; ATT00001.htm |

Sent from my iPhone

Begin forwarded message:

> **From:** "Eric J. Troutman" <ejt@severson.com>
> **Date:** February 3, 2015 at 12:23:34 PM PST
> **To:** "Divya S. Gupta" <dsg@severson.com>, "'liz@craigperry.com'" <liz@craigperry.com>
> **Cc:** "kstein@HowardandHoward.com" <kstein@HowardandHoward.com>, "'Weiland, Jason P.'"
> <JWeiland@HowardandHoward.com>, 'Craig Perry' <cperry@craigperry.com>
> **Subject:** RE: Spencer v. WF (Rule 26 Follow Up)
>
> I'd really like to avoid putting pen to paper on this motion to stay if I don't have to. Settlement will get a lot (lot) harder once that happens. By the way, did you see the new one out of Wisconsin? Good stuff. Here's my favorite part:
>
> "The ACA Petition also seeks clarity on a troubling aspect of this case: whether there should be a safe harbor for autodialed "wrong number" calls. Instead of simply answering the phone and telling Performant that she wasn't the person they were trying to reach, Gensel (on the advice of counsel) documented all the calls she received for a lengthy period of time. This was a transparent attempt to accumulate damages – at $500 per violation, Gensel is asking for $94,000 even before taking the issue of treble damages to the jury. Since the TCPA is a strict liability statute, the absence of a safe harbor encourages such opportunistic behavior. Strict liability is particularly inappropriate here because Performant stopped calling Gensel once she finally answered the phone and told them they had the wrong number. Other courts have granted stays in "wrong number" cases in deference to the ACA Petition. See, e.g., Barrera v. Comcast Holdings Corp., No. 14-cv-00343-TEH, 2014 WL 1942829 (N.D. Cal. May 12, 2014). The behavior of litigants such as Gensel may inform the FCC's determination regarding a safe harbor provision."
>
>> **From:** Divya S. Gupta
>> **Sent:** Tuesday, February 03, 2015 11:57 AM
>> **To:** 'liz@craigperry.com'
>> **Cc:** Eric J. Troutman; kstein@HowardandHoward.com; 'Weiland, Jason P.'; 'Craig Perry'
>> **Subject:** RE: Spencer v. WF (Rule 26 Follow Up)
>>
>> Thanks Liz. Craig, please also let us know if you've come up with a settlement demand.
>>
>> Divya
>>
>>> **From:** liz@craigperry.com [mailto:liz@craigperry.com]
>>> **Sent:** Tuesday, February 03, 2015 11:32 AM
>>> **To:** Divya S. Gupta

1

**Cc:** Eric J. Troutman; kstein@HowardandHoward.com; 'Weiland, Jason P.'; 'Craig Perry'
**Subject:** RE: Spencer v. WF (Rule 26 Follow Up)

Ms. Gupta,

I am showing that the proposed discovery plan is due on February 6, 2015.   I believe Eva from our office has already submitted it to local counsel for review/edits.   However, I will double check the file (she is not in the office today) and if it has not been sent I will get this over for review by the end of the day today.

Respectfully,

Liz

**Liz Carrillo| Craig K. Perry & Associates | Las Vegas, NV**
Legal Assistant/Office Manager | 8010 West Sahara Avenue Suite 260 Las Vegas, NV 89117
| ☎ phone: 702.228-4777 | 🖷 fax: 702.943-7520 | ✉ e-mail: **liz@craigperry.com** *Electronic Privacy*

*Notice.* This e-mail, and any attachments, contains information that is, or may be, covered by electronic communications privacy laws, and is also confidential and proprietary in nature. If you are not the intended recipient, please be advised that you are legally prohibited from retaining, using, copying, distributing, or otherwise disclosing this information in any manner. Instead, please reply to the sender that you have received this communication in error, and then immediately delete it. Thank you in advance for your cooperation.

**From:** Divya S. Gupta [mailto:dsg@severson.com]
**Sent:** Monday, February 2, 2015 2:31 PM
**To:** 'Craig Perry (cperry@craigperry.com)'
**Cc:** Eric J. Troutman; 'kstein@HowardandHoward.com'; liz@craigperry.com; Weiland, Jason P. (JWeiland@HowardandHoward.com)
**Subject:** RE: Spencer v. WF (Rule 26 Follow Up)

Craig,

I believe our discovery plan in this one is due tomorrow.  Please let me know if you have circulated a draft to local counsel.  Also, let us know if you've had a chance to discuss with your client regarding settlement.

Thanks,

Divya

**From:** Divya S. Gupta
**Sent:** Thursday, January 22, 2015 11:29 AM
**To:** Craig Perry (cperry@craigperry.com)
**Cc:** Eric J. Troutman; kstein@HowardandHoward.com
**Subject:** Spencer v. WF (Rule 26 Follow Up)

Craig,

As a follow up to our Rule 26 call on Tuesday, I just wanted to follow up on the proposed discovery plan per the dates we discussed.  Also, let us know if your client has a settlement demand.

Thanks,

Divya

Divya S. Gupta
Severson & Werson
19100 Von Karman Avenue, Suite 700
Irvine, CA 92612
Telephone: (949) 442-7110
Direct: (949) 225-3790
Facsimile: (949) 442-7118
dsg@severson.com

NOTICE:  This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521.
The information herein is confidential, privileged and exempt from disclosure under applicable law. This E-mail (including
attachments) are intended solely for the use of the addressee hereof.  If you are not the intended recipient of this message, you are
prohibited from reading, disclosing, reproducing, distributing, disseminating, or otherwise using this transmission. The originator of
this e-mail and its affiliates do not represent, warrant or guarantee that the integrity of this communication has been maintained or
that this communication is free of errors, viruses or other defects.  Delivery of this message or any portions herein to any person
other than the intended recipient is not intended to waive any right or privilege.  If you have received this message in error, please
promptly notify the sender by e-mail and immediately delete this message from your system.

This email is free from viruses and malware because avast! Antivirus protection is active.

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**LENNETT GENSEL,**

        Plaintiff,

    –vs–                         **Case No. 13-C-1196**

**PERFORMANT TECHNOLOGIES, Inc.,**

        Defendant.

---

## DECISION AND ORDER

---

Lennett Gensel's cell phone provider assigned her a number that was previously assigned to a woman who defaulted on a student loan. Performant Technologies, Inc. repeatedly called that number in an attempt to collect on the debt. Gensel alleges that by doing so, Performant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Gensel moves for partial summary judgment, but Performant moves to stay pending rulings on two petitions currently before Federal Communications Commission ("FCC").

The TCPA provides that certain entities must not "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party), using any automatic telephone dialing system or prerecorded voice … to any telephone number assigned to a …

cellular telephone service ... or any service for which the called party is charged for the call." § 227(b)(1)(A)(iii). The term "automatic telephone dialing system" ("ATDS") means "equipment which has the capacity ... to store or produce telephone numbers to be called, using a random or sequential number generator." § 227(a)(1).

One petition asks the FCC to decide whether the TCPA applies to non-telemarketing calling activities. *In re Comm'n Innovators' Pet. For Declaratory Ruling* (June 7, 2012) (the "CI Petition") (asking the Commission to "clarify, consistent with the text of the TCPA and Congressional intent, that predictive dialers that (1) are not used for telemarketing purposes and (2) do not have the current ability to generate and dial random or sequential numbers, are not [ATDS] under the TCPA and the Commission's TCPA rules"). Another asks the FCC to "(1) confirm that not all predictive dialers are categorically [ATDS]; (2) confirm that 'capacity' under the TCPA means present ability; (3) clarify that prior express consent attaches to the person incurring a debt, and not the specific telephone number provided by the debtor at the time a debt was incurred;[1] and (4) establish a safe harbor for autodialed 'wrong number' non-telemarketing calls to wireless numbers." *Petition for Rulemaking of*

---

[1] The third issue is not relevant in this case.

- 2 -

*ACA Int'l* (January 31, 2014) (the "ACA Petition"). A ruling on the first petition is expected before a ruling on the second.

Performant's motion invokes the primary jurisdiction doctrine. This doctrine "is really two doctrines." *Arsberry v. Ill.*, 244 F.3d 558, 563 (7th Cir. 2001). In its "central and original form," the doctrine applies "only when, in a suit involving a regulated firm but not brought under the regulatory statute itself, an issue arises that is within the exclusive original jurisdiction of the regulatory agency to resolve, although the agency's resolution of it will usually be subject to judicial review." *Id*. In its "weaker sense," the sense relevant here, the doctrine "allows a court to refer an issue to an agency that knows more about the issue." *In re StarNet, Inc.*, 355 F.3d 634, 639 (7th Cir. 2004); *see also Arsberry* at 563 (the doctrine "allows a federal court to refer a matter extending beyond the 'conventional experiences of judges' or 'falling within the realm of administrative discretion' to an administrative agency with more specialized experience, expertise, and insight'") (quoting *Nat'l Comm'n Assoc., Inc. v. Am. Telephone & Telegraph Co.*, 46 F.3d 220, 222-23 (2d Cir. 1995)).

"No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the

- 3 -

existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956). Courts consider the following factors in making this determination: (a) whether the question at issue is within the conventional experience of judges; (b) whether the question at issue involves technical or policy issues within the agency's particular field of expertise; (c) whether a determination would involve the exercise of agency discretion; (d) the need for a consistent and uniform rule; (e) the likelihood of inconsistent rulings if not referred to the agency; (f) whether the issue has already been before the agency; (g) whether judicial economy is served by having the agency resolve the issue; and (h) whether the referral will result in substantial delay and added expense. *Gilmore v. S.W. Bell Mobile Sys., LLC*, 210 F.R.D. 212, 221 (N.D. Ill. 2001).

The calls in this case were related to debt collection, and the application of the TCPA to such calls is far from clear. *See Passero v. Diversified Consultants, Inc.*, No. 13-CV-338C, 2014 WL 2257185, at *2-3 (W.D.N.Y. 2014) (noting split of authority on the issue). Gensel argues that the FCC settled the issue in a 2008 ruling, but subsequent inconsistent rulings demonstrate that it did nothing of the sort. Hence, the request for a ruling in the CI Petition. Similarly, both petitions seek clarity on the issue

- 4 -

of "capacity." *Higginbotham v. Diversified Consultants, Inc.*, No. 13-2624-JTM, 2014 WL 1930885, at *3 (D. Kan. May 14, 2014) ("Neither the TCPA nor previous FCC orders address the meaning of 'capacity,' specifically, whether it should be interpreted broadly to mean potential capacity or narrowly to mean present capacity"). This is another issue at play in the instant case. *See* Performant's Additional Statement of Facts, ¶ 6 ("The Avaya and Soundbite systems (the systems used to call the subject number) did not have the capacity to randomly or sequentially call phone numbers, nor do they have such capacity now"). Thus, a stay is warranted pending the outcome of either or both petitions. *See Hurrle v. Real Time Resolutions, Inc.*, No. C13-5765 BHS, 2014 WL 670639 (W.D. Wash. Feb. 20, 2014) (granting stay pending CI Petition); *Wahl v. Stellar Recovery, Inc.*, No. 14-cv-6002-FPG, 2014 WL 4678043, at *2 (W.D.N.Y. Sept. 18, 2014) (granting stay pending CI and ACA Petitions).

The ACA Petition also seeks clarity on a troubling aspect of this case: whether there should be a safe harbor for autodialed "wrong number" calls. Instead of simply answering the phone and telling Performant that she wasn't the person they were trying to reach, Gensel (on the advice of counsel) documented all the calls she received for a lengthy period of time. This was a transparent attempt to accumulate damages – at $500 per

- 5 -

violation, Gensel is asking for $94,000 even before taking the issue of treble damages to the jury. Since the TCPA is a strict liability statute, the absence of a safe harbor encourages such opportunistic behavior. Strict liability is particularly inappropriate here because Performant stopped calling Gensel once she finally answered the phone and told them they had the wrong number. Other courts have granted stays in "wrong number" cases in deference to the ACA Petition. *See, e.g., Barrera v. Comcast Holdings Corp.*, No. 14-cv-00343-TEH, 2014 WL 1942829 (N.D. Cal. May 12, 2014). The behavior of litigants such as Gensel may inform the FCC's determination regarding a safe harbor provision.

In sum, a stay of these proceedings under the primary jurisdiction doctrine will promote uniformity in the administration of the TCPA. Instead of furthering a split of authority regarding the issues presented by Gensel's complaint, it is more efficient to simply wait for the FCC to do what it has already been asked to do. The Court will be in a better position to proceed to judgment with definitive guidance from the FCC. *CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010) (holding that the FCC's orders relating to the TCPA are binding under the Hobbs Act).

- 6 -

NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:

1.  Performant's motion to stay [ECF No. 30] is **GRANTED**. The final pretrial conference and trial dates are **CANCELED**;

2.  Gensel's motion for partial summary judgment [ECF No. 38] is **DENIED** without prejudice; and

3.  Not later than **180 days** following the date of this Order, the parties are directed to file a joint status report advising the Court of the status of the proceedings before the FCC.

Dated at Milwaukee, Wisconsin, this 28th day of January, 2015.

BY THE COURT:

HON. RUDOLPH T. RANDA
U.S. District Judge

- 7 -